IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES LEROY FREE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:16-cv-938-TFM |
| | ) | [wo] |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# **OPINION**

Following administrative denial of his application for Supplemental Security Income benefits under Title XVI of the Social Security Act and denial of his Title II application for disability insurance benefits beginning October 10, 2012, Charles Leroy Free ("Free" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. (Tr. 19-30). When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision denying supplemental security income and disability benefits.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## I. STANDARD OF REVIEW

Free seeks judicial review of the Commissioner of Social Security Administration's decision denying his application for disability insurance benefits and supplemental security income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm,reverse and remand with instructions, or reverse and render a judgment. *Id.*

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. In review of a social security case, the court will use the substantial evidence standard to affirm the Commissioner's decision if substantial evidence exists to support the decision. *Mitchell v. Commissioner,* 771 F.3d 780, 781 (11th Cir. 2014) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The court is limited in its review, therefore the court is "preclude[d] [from] deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1986)). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*); *Moreno v. Astrue,* 366 Fed. Appx. 23, 26-27 (11th Cir. 2010) ("failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (Citation omitted).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (Citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id*.; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are

both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520;[4] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456 (11th Cir. June 10, 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;[5]

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at

---

[4] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or call a vocational expert. *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.* Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id.* In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

---

[6] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

### III. BACKGROUND AND PROCEEDINGS

The ALJ found that Free had not engaged in substantial gainful activity since the alleged onset date, October 10,2012. (Tr. 21). The ALJ further concluded Free suffered from severe impairments of borderline intellectual functioning, depressive disorder, anxiety, visual deficit, carpal tunnel syndrome, degenerative disc disease of the lumbar spine, chronic left shoulder pain, asthma, tobacco abuse, and obesity. (Tr. 21). However, the ALJ found Free did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 4040, Subpart P, Appendix 1. (Tr. 22). The ALJ heard testimony from a Vocational Expert at the hearing. (Tr. 81-97).

The ALJ opined Owens had the residual functional capacity ("RFC") to perform

> a range of light work as defined in 20 CFR 404.15679(b) and 416.967(b). Specifically, he can lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk 6 hours and sit six hours in an 8-hour workday. He cannot push/pull heavy arm, leg or foot controls. He cannot climb ladders, ropes or scaffolds. He cannot crouch, kneel crawl, or reach overhead. He can not work around chemical fumes or gases, wetness or humidity. He can occasionally work around extreme temperatures. He can occasionally work around vibrations. He cannot squat. He can frequently reach and continuously handle and finger with the right non-dominant hand. He can occasionally handle, finger, and feel with the left dominant hand. He cannot climb ramps or stairs other than for entering and exiting the workplace. He cannot operate hazardous moving machinery, drive or work at heights. He is limited to simple, routine tasks. He would be limited to reading at the 3rd or 4th grade level on an occasional basis.

(Tr. 23). Based upon the foregoing RFC assessment, the ALJ determined Free was not capable of performing any of his past relevant work. (Tr. 28). However, relying upon vocational expert testimony, the ALJ concluded there was other work available in significant numbers in the national economy which Owens could perform despite the stated RFC limitations. (Tr. 28). Accordingly, the ALJ concluded Owens had not been under a disability as defined in the Social Security Act from October 10, 2012, the alleged onset date, through the date of her decision. (Tr. 29). Free

appealed the ALJ's decision to the Appeals Council and his request for review was denied in a letter dated October 18, 2016. (Tr. 1). Thus, Free exhausted all his administrative remedies and now appeals the Commissioner's final decision.

### IV. STATEMENT OF FACTS

Free was forty-five years old at the time of his alleged onset date of October 10, 2012. (Tr. 100). He completed the eighth grade in school. (Tr. 239). His past work includes kitchen helper, fry cook, tire changer, cashier checker, industrial cleaner, automobile detailer, trailer mechanic, and automobile mechanic. (Tr. 82-83). Free alleged he was disabled due to a pinched nerve in the left shoulder, rotator cuff impairment, being blind in the left eye, ADD/ADHD, and constant back pain. (Tr. 238).

At the second hearing before the ALJ on November 5, 2015[7], Free testified that he was 48 years old and lived with his mother. (Tr. 48). He told the ALJ that "I help my mom what little bit I can." (Tr. 48). He testified that he was kicked out of school after getting into an altercation with the principal and that he never got a GED. (Tr. 49). He testified that he can read and write a little bit." (Tr. 49). He was in special education classes in school. (Tr. 49). He went to work after dropping out of school. (Tr. 50). Free further testified that his stepfather taught him how to do mechanic type work when he was growing up. (Tr. 50).

Free was incarcerated three times for possession of marijuana. (Tr. 52-53). He was in a drug treatment program where he violated parole by talking to a woman in the program. (Tr. 52). He participated in work release where he worked as a mechanic and worked cutting grass and emptying garbage. (Tr. 52-56). Free worked on the cargo portion of 18-wheelers and was also

---

[7] A hearing was held before the ALJ on January 8, 2015 where the ALJ determined that Plaintiff should undergo consultative eye and orthopedic exams. The hearing was continued until after those exams. (Tr. 40).

self-employed as a mechanic. (Tr. 60-62). He further testified that working in mechanic type fields is the only work he could perform. (Tr. 62).

However, Free also testified that he can not work because of back pain which prevents him from standing for very long. (Tr. 63). Free told the ALJ that he takes Tylenol and anti-inflammatories for pain. (Tr. 63). Because Free had limited income and no insurance, he was being treated at Dothan Family Health Services, but his care was terminated because he routinely missed appointments. (Tr. 63-64).

Free testified that on a normal day he lays in bed, watches some tv and tries to help his mother. (Tr. 65-66). He drives only when he has to and his mother mostly does their shopping for groceries. (Tr. 66). He can do cooking that does not take too much time and he has tried to cut the grass with a riding lawn mower, but could not complete the project because of back pain. (Tr. 66-67). He goes to church about twice a month and goes fishing about six times a year. (Tr. 67-69). Free also testified that he can not reach up high over his shoulder and he has trouble picking up objects. (Tr. 71-72). Free testified that he is unable to work because of back pain, but did not testify about any work related problems with his vision. (Tr. 63-70). Free further testified that he forgets things and has never had a checking account and cannot write a check or balance a checkbook. (Tr. 74). He also testified that his mother helps him read his mail. (Tr. 75).

### V. MEDICAL EVIDENCE

The medical records show that Free was treated a number of times at the emergency room for various complaints. Indeed, on May 23, 2011, Free reported to the emergency room for an ear ache with moderate pain. (Tr. 327-331). On September 26, 2011, Free went to the emergency room with a headache; a CT scan showed fluid on the left side of his sphenoid sinus. (Tr. 319-326). On November 26, 2011, Free went to the emergency room complaining that the had

something stuck in his throat; he was diagnosed with nasopharyngitis. (Tr. 308-318). Free was treated at the emergency room for a sprained hand and ankle on September 30, 2012, after he fell out of a peanut trailer while at work. (Tr. 297-303). Later on October 12, 2014, Free was treated at the emergency room for bronchitis. (Tr. 360-369). Then on July 3, 2015, Plaintiff went to the emergency room with a left ankle injury when he mis-stepped. (Tr. 414-419). On August 31, 2015, Free presented to the emergency room after a car accident. (Tr. 407). X-ray showed "no acute skeletal abnormality" and "very mild degenerative disc disease C6-7. " (Tr. 412). On September 19, 2015, Free was treated for back pain in the emergency room following a car accident. (Tr. 401-406).

Plaintiff was examined at the Dothan Family Health Center, on February 19, 2014, where it was reported that Plaintiff's "lumbosacral spine did not demonstrate full range of motion." and "lumbosacral spine pain was elicited by flexion." but straight leg raises of the right and left legs were normal. (Tr. 372). An x-ray of the lumbar spine showed "mild degenerative changes superior endplate of L3." (Tr. 378). Free was assessed with obesity, anxiety, seasonal pattern depression, lower back pain, visual impairment in better eye: near total; lesser eye total, feeling week, taking high-risk medication and asthma. (Tr. 373). The record reflects "strongly recommended referral to optometry and psychiatry." (Tr. 373). On April 2, 2014, Free returned to Dothan Family Health Center for examination which reported "normal patient with full range of motion, mild pain to anterior shoulder elicited with raising above head but pt is able to raise above head fully, some mild weakness likely with resistance." and "abnormal bilateral hand numbness, incomplete fist made to left hand, but good grip noted on exam". (Tr. 376). Free was assessed with feeling weak, lower back pain, seasonal pattern depression, anxiety, polyneuropathy, pain in the finger joints." (Tr. 376).

Dr. Sam R. Banner, D.O., performed a consultative examination on May 23, 2014. (Tr. 333-337). He diagnosed Free with "Permanent Damage to Left Eye with severe vision loss", "Chronic Left Shoulder Pain", "Chronic Low Back Pain – degenerative disc disease", and "Attention Deficit Disorder." (Tr. 337). On exam, Dr. Banner noted "left pupil is grossly deformed and non-reactive to light." (Tr. 334). After exam, Dr. Banner opined Free would be able to occasionally lift and carry up to 10 pounds. (Tr. 338). Dr. Banner opined Free could sit for 2 hours at a time and stand/walk for 15 minutes at a time. (Tr. 339). Dr. Banner further opined Free could never reach overhead and only occasionally reach in all directions, but that he could frequently handle, finger and feel. (Tr. 340). He also opined that Free had no visual limitations (Tr. 341). Banner further opined that Plaintiff could never climb ladders or scaffolds, balance stoop, kneel, crouch, or crawl. (Tr. 341).

Dr. Randall Jordan, Psy.D., performed a psychological evaluation on May 29, 2014. (Tr. 349). He diagnosed Free with depressive disorder, borderline intellectual functioning and chronic pain. (Tr. 351). Dr. Jordan stated that Plaintiff's "cognitive, but more so level of academic functioning, would indicate he would only be able to do labor type work that has minimal literacy demands." (Tr. 352).

Dr. Richard O. Meadows, D.O., performed a consultative examination on February 19, 2015. (Tr. 380). On exam, Dr. Meadows noted "vision Left eye; greater than 20/200, Right eye: 20/30, Comments: With glasses." (Tr. 380). The exam also revealed "full rom of the upper and lower ext . . . except in the left shoulder pain and stiffness with rom some rotator cuff weakness and pain with stress pos can test . . . C rom painful but neg foramen closure." (Tr. 381). Dr. Meadows also found a positive tinels sign on the left wrist. (Tr. 381). X-ray of Free's left hand showed mild degenerative changes. (Tr. 390). He diagnosed other specified disorders of rotator

cuff syndrome of shoulder and allied disorders, unspecified backache, carpal tunnel syndrome, generalized osteoarthrosis, involving multiple sites, loss of vision due to trauma left eye, and osteoarthritis of the knees and hands and wrist. (Tr. 381). Dr. Meadows opined that Free could frequently lift and carry up to 10 pounds and up to 20 pounds occasionally. (Tr. 382). Dr. Meadows also opined that Free could sit, stand, and walk for up to 30 minutes at a time. (Tr. 383).

On April 29, 2015, Dr. Barreca performed a consultative eye examination. (Tr. 393-395). With best correction, Free had 20/200 vision for distance and reading or close work in his left eye. (Tr. 393). His right eye had 20/25 vision for distance and 20/20 vision for reading or close work. (Tr. 393). Dr. Berreca found Free does not have usual binocular vision for distance or near. (Tr. 393). When asked if depth perception was present, Dr. Berraca wrote "only monocular even to depth perception." (Tr. 394). Dr. Berrraca opined Free should avoid activities that require good binocular vision and depth perception, and avoid high elevations and hazardous areas. (Tr. 394).

### VI. ISSUES

Free raises four issues on appeal:

1) Whether the ALJ erred when she posed an incomplete hypothetical to the vocational expert?

2) Whether the ALJ erred by substituting her opinion for the opinion of a medical professional?

3) Whether the ALJ's finding of Free's residual functional assessment was not based on substantial evidence?

4) Whether the ALJ's fifth step finding is not based on substantial evidence?

*See* Doc. 11 at p. 1.

## VII. DISCUSSION AND ANALYSIS

### A. Whether the ALJ erred when she posed an incomplete hypothetical to the vocational expert?

Plaintiff argues that the ALJ failed to specifically state in the hypothetical posed to the VE that Plaintiff was limited to reading "occasionally"; and thus, the ALJ committed reversible error when she posed this incomplete hypothetical question to the VE. (Tr. 84). Rather, the ALJ stated "the individual would be limited to reading at I'd say approximately a third to fourth grade level. But reading for the most part . . . should not be really a part of his regular job duties." (Tr. 84). The VE indicated that the hypothetical was "vocationally clear"; after which the ALJ explained that the job would be "essentially a job that really doesn't involve reading other than, you know, maybe a familiar checklist or something that that [sic] he has already become familiar with and knows what it says." The VE indicated that no additional clarification was needed. (Tr. 85). Thus, the Court concludes that the hypothetical was not inconsistent with the ALJ's RFC assessment. Furthermore, for the reasons stated in Section C. below, the Court concludes that any error would be harmless because substantial evidence supports the ALJ's RFC assessment. *See D'Andrea v. Comm'r of Soc. Sec.,* 389 Fed. App'x. 944, 948 (11th Cir. 2010) (Affirming even where the ALJ "misconstrued the psychologists' findings" on the basis that "the misconstruction was harmless" since the findings did not contradict the ALJ's conclusion Plaintiff did not have a severe impairment.)

### B. Whether the ALJ erred by substituting her opinion for the opinion of a medical professional?

Plaintiff argues that the ALJ erred by substituting his judgment for that of the consulting Opthamologist. The law is clear; the opinions of one-time examiners, i.e., non-treating doctors are not entitled to "great weight". *Crawford v. Comm'r of Social Security,* 363 F.3d 1155, 1160

(11th Cir. 2004) citing *McSwain v. Bowen*, 814, F. 2d 617, 619 (11th Cir. 1987). Moreover, an ALJ may discount any doctor's opinion when the opinion is conclusory, the doctor fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *Crawford,* 363 F.3d at 1159-60.

The consultative evaluation of Nicholas Barreca, M.D., showed Plaintiff had corrected vision in the right eye of 20/20 to 20/25, and in the left eye of 20/200. (Tr. 393). Dr. Barreca opined that due to poor vision in the left eye, Plaintiff should avoid activities that required "good" binocular vision or depth perception, and should avoid high elevations and hazardous environments. (Tr. 394). The evidence also showed that Plaintiff's corrected vision for both eyes was 20/40. (Tr. 334). The ALJ credited Dr. Barreca's opinion as to high elevations and hazardous environments and consequently found that Plaintiff had to avoid operating hazardous moving machinery and working at heights. (Tr. 23, 26). However, the ALJ discounted Dr. Barreca's opinion "somewhat as it is inconsistent with the claimant's own statements regarding his vision." (Tr. 26). Specifically, Plaintiff testified that he was able to see well enough to work on cars, fish, drive regularly and shop. (Tr. 26).

Plaintiff testified that he worked as a mechanic for several years and did not testify that any vision problems prevented him from doing work as a mechanic. (Tr. 54-63). Instead, Plaintiff testified that he was able to walk outside, watch TV, do limited shopping for groceries, limited cooking, do laundry, go to church, go fishing about six times a year, and work on cars. He testified that the limitations he had on these activities resulted from back pain. (Tr. 63-70). He did not testify as to any limitations resulting from his vision. (Tr. 63-70). Further, Dr. Sam Banner, D.O., another consultative examiner who performed a vision exam, testified that Plaintiff had no visual

limitations. (Tr. 341). Thus, the Court concludes that substantial evidence supports the ALJ's discounting of the opinion of the consulting ophthalmologist. *Moore,* 405 F. 3d at 1211.

  C.  **Whether the ALJ's finding of Free's residual functional capacity assessment is based on substantial evidence?**

Plaintiff argues that the ALJ's finding of Free's residual functional capacity assessment is not based on substantial evidence. "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore,* 405 F. 3d at 1211. (Citation omitted). The ALJ found that Free can "stand/walk 6 hours and sit 6 hours in a an 8-hour workday." (Tr. 23). In making this finding, the ALJ rejected the opinion of Dr. Meadows and Dr. Banner. (Tr. 27-28). Dr. Meadows opined that Free could sit, stand and walk for up to 30 minutes at a time. (Tr. 383). Dr. Banner opined Free could sit for 2 hours at a time and stand/walk for 15 minutes at a time. (Tr. 339).

Plaintiff underwent a consultative examination with Dr. Banner on May, 2014 (Tr. 33). Dr. Banner's musculoskeletal examination was generally unremarkable" Plaintiff's neck range of motion was normal, with no spasms; his extremities were normal except for some left ankle tenderness; the back exam was normal; straight leg raising was negative: gait/walking was normal; Plaintiff exhibited no pain getting on or off the exam table; and muscle tone and strength were all normal. (Tr. 333-336). Despite the mostly normal exam, Dr. Banner opined that Plaintiff could only stand or walk for up to 30 minutes in an 8-hour workday. (Tr. 339).

Plaintiff also underwent a consultative examination with Richard Meadows, D.O. in February 2015. Like Dr. Banner's exam, Dr. Meadows exam was mostly normal; the back exam was normal except for some lumbar tenderness, with negative straight leg raising; there was normal range of motion of all extremities, normal strength, tone and reflexes, and there were not gait abnormalities

noted. (Tr. 381). Nevertheless, Dr. Meadows opined that Plaintiff could only stand or walk for up to 15 minutes at a time, and for no more than 2 hours each in an 8-hour workday. (Tr. 383).

The Court concludes that the ALJ appropriately found that Dr. Banner and Dr. Meadow's examinations did not support their restrictive opinions. (Tr. 26-28, 333-339, 381-383). Indeed, the Court concludes based upon its independent review of the record that the objective imaging revealed only "mild degenerative changes" of the lumbar spine. (Tr. 27, 378). Moreover, the court concludes that Dr. Banner and Dr. Meadows' own examination findings did not support their restrictive opinions as to Free's ability to stand, walk, and sit. Accordingly, the Court concludes that the ALJ properly discounted the opinions of Dr. Banner and Dr. Meadows; and thus, the ALJ's residual functional capacity assessment is supported by substantial evidence. *Moore,* 405 F. 3d at 1211.

**D. Whether the ALJ's fifth step finding is supported by substantial evidence?**

"In a disability determination, once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Jones v. Apfel,* 190 F. 3d 1224, 1229-30 (11th Cir.1999). The jobs must be available in significant numbers in the national economy. *Allen v. Bowen,* 816 F. 2d 600, 603 (11th Cir. 1987). The ALJ stated

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as bakery line worker Dictionary of Occupational Titles (DOT) #524.687-022 (light/unskilled SVP2) (112,000 jobs in the national economy; 1,100 jobs in the regions); school bus monitor DOT #372.667-042 (Light/unskilled SVP2 (142,00;

1400): and usher DOT #344.677-014 (light/unskilled SVP2) (143,000; 724 - with some reduction - 50% - due to limitations on stairs and ramps.)

(Tr. 29).

Plaintiff argues the ALJ's statement that the usher position would have a 50% reduction due to limitations on stairs and ramps is a misstatement by the ALJ of the VE testimony. Indeed, Plaintiff points to VE testimony where the VE testified that he did not know what that reduction would be. (Tr. 97). However, the Court concludes that this misinterpretation of the testimony was harmless since the ALJ concluded pursuant to VE testimony that there were 1,100 bakery line worker jobs, and 1,400 school bus monitor jobs, in the local economy. (Tr. 28, 85-86). *See D'Andrea,* 389 Fed. App'x. at 948 (where court held "the misconstruction was harmless" since the findings did not contradict the ALJ's conclusion Plaintiff did not have a severe impairment.) Accordingly, the Court concludes that the ALJ's fifth step finding is supported by substantial evidence. *Moore,* 405 F. 3d at 1211.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision. A separate order will be entered.

DONE this 18th day of December, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE